# FELIX JOHANNES
## v.
# ELIZABETH KIELGAST.

*Landlord and Tenant—Termination of Lease by Notice—Forcible Detainer—Action for Rent.*

1. Where a lease has been terminated by notice and an action of forcible detainer successfully prosecuted, the landlord can not maintain an action for installments of rent which would have become due had the lease continued in force.

2. In the case presented, the covenant to pay rent did not continue in force after the lease was terminated by notice and pending the action of forcible detainer.

[Opinion filed December 18, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. MARTIN C. NEUBERGER, for appellant.

The judgment for possession establishes conclusively the termination of the lease and tenancy, and that during the time appellant occupied the premises after the expiration of the notice he was a trespasser and tort feasor. Appellee could only recover damages for the wrongful detention of the premises by appellant for that period in an action of tort, or one prescribed by statute, but not in an action founded solely upon the lease. Hinsdale v. White, 6 Hill, 507; Featherstonhaugh v. Bradshaw, 1 Wend. 134; Taylor's Landlord and Tenant, 5th Ed., § 617.

The rent that accrued prior to the termination of the lease, namely, the rent for the month of August, 1878, could only be recovered in this action; but no rent for the subsequent months. Hinsdale v. White, 6 Hill, 507.

Messrs. SIDNEY C. EASTMAN and GEO. E. SWARTZ, for appellee.

The notice did not *per se* terminate the lease. National Oil

Johannes v. Kielgast.

Refining Co. v. Bush, 88 Pa. St. 341; Grove v. Barclay, 106 Pa. St. 164.

The suit for possession must be regarded as terminating the tenancy, and we think the judgment for possession the decisive act which annulled the lease. The lease provides that in case of default in any of its covenants and agreements, " it shall and may be lawful for the said party of the first part, her heirs, executors, administrators, agent, attorney or assigns, at her election, to declare said term ended, and into the said premises, or any part thereof, either with or without process of law, to re-enter."

Now, what is the just and proper interpretation of this covenant? The election is given, not only to declare the term ended, but to enter into possession of the premises as well. In determining the election of the landlord, and its effect, is it not highly proper to look at the whole covenant, and, if possible, give effect to all parts of it? Is the appellee to lose her rights and be deprived of her property because she chose rather to re-enter into the possession of the same by due process of law, than to commit a breach of the peace, and enter by force and arms? On the other hand, had not the appellant, the lessee, an undeniable right, a right as old as the common law, to insist upon a trial and ask that the proper tribunal determine whether there be a default, and if a default exist, whether it be of such a character as to allow the lessor to exercise her election under the lease, terminate the tenancy and enter into possession of the property? Hartshorne v. Watson, 4 Bing. (N. C.) 178.

Whether the lease was terminated, either upon the expiration of the notice, as by appellant alleged, or at some time subsequent to the expiration of the said notice, and prior to the judgment for possession, the appellant has expressly and in terms bound himself to be subject to all the conditions and provisions of the lease, in the event of the very things occurring, which have occurred, and which he now resists. In the next to the last paragraph of the lease commencing, " It is expressly understood and agreed," this appellant binds himself that " if at any time said term shall be ended at such election

of said party of the first part, her heirs, executors, administrators or assigns, as aforesaid, or in any other way, the said party of the second part, his executors, administrators and assigns do hereby covenant and agree to surrender and deliver up the said above described premises and property peaceably to said party of the first part, her heirs, executors, administrators and assigns, immediately upon the determination of the said term as aforesaid, and if he shall remain in possession of the same after such default, or after the termination of this lease in any of the ways above named, he shall be deemed guilty of a forcible detainer of said premises under the statute, and shall be subject to all the conditions and provisions above named, and to eviction and removal, forcibly or otherwise, with or without process of law, as above stated." The lessee having thus bound himself that in such an emergency he would be subject to all the provisions of the lease, is now estopped from denying his liability. Pickett v. Bartlett, 3 N. Y. (L. Ed.) 405; 9 Cent. Rep. 831.

The Supreme Court of this State in Clapp v. Noble, 84 Ill. 66, say: " Although, technically, the notice to quit may be regarded as terminating a tenancy, the fact still exists that the lessee remains in the occupancy, and does not choose to sever the relation. It is just and proper, then, that he should be held amenable to all the presumptions that can be raised in such a case."

GARNETT, P. J. This is an action of covenant brought by appellee against appellant, to recover certain installments of rent alleged to be due on a lease of premises known as No. 59 Archer Avenue, Chicago, for a term beginning November 1, 1877, and ending November 1, 1882. The rent which appellant covenanted to pay, was $35 per month, and he did pay the same to the month of August, 1878. Having made default in payment of the rent for that month, appellee, about the 15th of September, 1878, served upon him a written notice of termination of the lease in five days, if the rent was not paid within that time.

The rent remaining unpaid, the appellee, at the end of the

five days, commenced suit in forcible detainer against appellant, which resulted in a judgment for possession in favor of appellee in February, 1879, the appellant having occupied until that date. This action of covenant was commenced March 5, 1886, and judgment was rendered by the court below for the rent for the months of August, September, October, November and December, 1878, and January, 1879, which appellant now seeks to reverse, on the ground that an action on his covenant can not be maintained for any rent accruing after the termination of the lease. The right of enjoyment is the correlative of the duty to pay rent.

Whenever the right of enjoyment is lawfully terminated, so that it can not be restored except by mutual consent, the covenant as to payment, ceases to be an obligation as to any installment, which, by the terms of the lease, would thereafter have become due. Authority in point is not wanting.

In Jones v. Carter, 15 M. & W. 718, the lessee's covenant was for the payment of rent on the 25th of March and the 29th of September of each year of the term. The installment due March 25, 1845, was paid, but on May 19, 1845, the lessor commenced ejectment against the lessee, for breach of covenant, there being a proviso in the lease that for any breach of covenant it should determine and be utterly void, and the lessor at liberty to re-enter. The action for rent was commenced in January, 1846, before the termination of the action of ejectment. The court, Parker, B., said: "Without inquiring whether an ejectment be a real action, the bringing of such would, according to the authority of Lord Coke, be a determination of an election between two remedies. It seems to us that so distinct and unequivocal an act, must, independently of any technical reason, be a final determination of the landlord's option; for, after such an act, by which the lessor treats the lessee as a trespasser, the lessee would know that he was no longer to consider himself as holding the lease, and bound to perform the covenants contained in it; and it would be unjust to permit the landlord again to change his mind, and hold the tenant responsible for the breach of duty after that time. We are all, therefore, of opinion, that

the lease was determined in May, 1845, and consequently the defendant was not liable to pay the subsequent rent, or damages for any breach of covenant."

In Oldershaw v. Holt, 12 Adol. & E. 590, where a like question was raised, the court held: "The re-entry must be considered as taking effect from the time of the demise relied on in the ejectment. From that period the defendant, while holding the premises, was a wrong-doer, and liable for mesne profits. The action should have been brought for those and not for rent."

The same rule is held in Stuyvesant v. Davis, 9 Paige Ch. 428. So, in the case at bar, the action should have been for mesne profits or for use and occupation. Hartshorne v. Watson, 4 Bing. (N. C.) 178, relied on by appellee, is not in conflict with the foregoing cases.

In the lease sued on there was a separate group of provisions to the effect that if any of the rent should be in arrears, or there should be any default in any of the covenants on the part of the lessee, it should be lawful for the lessor to declare the term ended and make entry with or without process of law and expel the lessee, using such force as might be necessary, and to distrain for any rent that might be due upon any property of the lessee, whether exempt from execution and distress by law or not, the lessee agreeing to waive his right to exemption; that it was the intention thereby to give the lessor a valid and first lien on all of the lessee's property, as security for the rent; and that in case of the ending of said term by election of the lessor, or otherwise, the lessee agreed to surrender the premises to the lessor peaceably, immediately upon such termination, and that if he should remain in possession of the same after such default, or after such termination of the lease, he should be deemed guilty of a forcible detainer and should "be subject to all the conditions and provisions above named."

For appellee it is contended that the clause making appellant subject to all the conditions and provisions above named, keeps the covenants in the lease alive, so that the lessee, although deprived of his estate, is still liable upon covenants

of the lease for any breach thereof happening after the termination of the lease by the landlord's election.

If that is the true interpretation, the lessee would be liable for the rent of the entire term, even if the lessor should have ended it in the second month for failure to pay the first month's rent, and that would be the case, if the lessee had only held possession one day after the termination of his estate. By insertion in the lease of words which the parties themselves did not see fit to use, we can make the instrument say that the lessee shall be liable on his covenants for all rents that may accrue while he shall so unlawfully occupy. But confining our attention to the words actually used by the parties, we must say that with reference to liability on the covenant for rent, they mean (1) that the tenant, in case he wrongfully holds over after the term is ended by election of the landlord, no matter when the election is made or for how short a time the holding over continues, shall be liable to his covenants for all the rent to the end of the term specified in the lease, or (2), that he is not liable on his covenants for any rent that accrues after the landlord's election.

We think this clause in the lease, upon which appellee relies, has no reference whatever to the payment of rent or the observance of the lessee's covenants after the termination of the lease, but merely to the condition of things presented to the minds of the parties by the separate group of provisions above set forth, to wit, the liability of the tenant to expulsion, forcible or otherwise, and to distress upon his property, his waiver of the right of exemption, etc.

The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

GARY, J., took no part in the decision of this case.